JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| IN RE: Debtor Allana Baroni | CASE NO. CV 22-7414-MWF |
|---|---|
| | ORDER RE: APPEAL FROM BANKRUPTCY COURT'S ORDERS DENYING JAMES BARONI'S MOTION RELATED TO THE CARMEL PROPERTY AND GRANTING IN PART TRUSTEE'S MOTION FOR PROTECTIVE ORDER |

Before the Court is a consolidated appeal of two orders from the United States Bankruptcy Court for the Central District of California (the Honorable Martin R. Barash, United States Bankruptcy Judge), Case No. 1:12-bk-10986-MB. This Court previously granted Appellant James Baroni's Motion to consolidate the two appeals, Case Nos. 22-cv-7414-MWF and 22-7526-MWF, under the earlier case number. (The "Consolidated Appeal" (Docket No. 17)).

In the Consolidated Appeal, Appellant James Baroni, the non-debtor spouse of Debtor Allana Baroni, appeals the following two orders: (1) the Bankruptcy Court's Order Denying Motion of James Baroni Relating to the Carmel Property (the "363 Motion") and the Bankruptcy Court's Order Granting in Part and Denying in Part Chapter 7 Trustee David Seror's ("Trustee") Motion for a Protective Order and Sanctions (the "Protective Order Motion"), both entered on the Bankruptcy Court's docket on September 12, 2022. (Appellant's Excerpts of Record ("ER") 2

1

(Written Order Denying James Baroni's Motion Related to the Carmel Property ("363 Order"), ER 3 (Written Order Granting in Part Chapter 7 Trustee's Motion for a Protective Order) (the "Protective Order"); (*see also* ER 45 (Bankruptcy Court's Oral Findings of Fact and Conclusions of Law on both Motions) ("FF&CL"), entered on the Bankruptcy Court Docket on August 18, 2022)).

Appellant filed his opening brief ("OB") on December 23, 2022. (Docket No. 20). Appellee Trustee filed his responsive brief ("RB") on January 23, 2023. (Docket No. 22). Appellant filed his reply brief ("ARB") on February 2, 2023. (Docket No. 24).

The Court read and considered the papers on the Motion and deemed the matter appropriate for decision without oral argument. *See* Fed. R. App. P. 34(a)(2)(C) (noting that appeals may be decided without oral argument if the "facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument").

The 363 Order and the Protective Order are **AFFIRMED**.

To the extent the Consolidated Appeal seeks to have the Carmel Property sold to Mr. Baroni, Mr. Baroni impermissibly seeks to collaterally attack the Carmel Sale Order, which specifically found and held that Mr. Baroni's § 363(i) rights were waived because Mr. Baroni failed to appear and object to the sale of the Property. Mr. Baroni neither timely appealed the Carmel Sale Order nor sought reconsideration under Rule 60(b). Therefore, Mr. Baroni may not now argue that the Bankruptcy Court erred by finding Mr. Baroni waived his § 363(i) rights prior to the "consummation" of the sale of the Carmel Property.

To the extent the appeal seeks to have the proceeds of the sale distributed to Mr. Baroni, the Consolidated Appeal is likewise an impermissible collateral attack not only on the Carmel Sale Order but additionally on the also-final Settlement Order, both of which detail precisely how the proceeds from the sale of the Carmel Property were to be distributed.

Accordingly, the Bankruptcy Court did not err in concluding that the 363 Motion was an impermissible collateral attack.  The 363 Order is **AFFIRMED**.

The Bankruptcy Court also did not abuse its discretion in granting the Trustee's request for a protective order because the discovery Mr. Baroni sought was irrelevant, burdensome, and unwarranted.  Indeed, there is no possibility that the discovery would change the outcome of the 363 Motion.  Accordingly, the Protective Order is likewise **AFFIRMED**.

## I.   BACKGROUND

***Carmel Sale Motion and Order***:  On October 30, 2020, the Trustee filed a Sale Motion to approve the sale of real property located at 3435 Rio Road in Carmel, California (the "Carmel Property") to the buyers (the "Captains") for $1.4 million subject to overbid and subject to Mr. Baroni's § 363(i) rights (the "Carmel Sale Motion").  The Carmel Sale Motion was served on Mr. Baroni's then counsel, Wayne Silver, via electronic filing (ER 4 (Carmel Sale Motion) at 127), and notice of the Sale Motion was served on Mr. Silver and Mr. Baroni twice – the original sale notice and the amended sale notice.  (*See* Appellee's Appendix ("AA"), Ex. 1 (Original Sale Notice), Ex. 2 (Amended Sale Notice)).  The Sale Notices indicated that "[i]f Mr. Baroni wishes to exercise []his right, he must appear at the hearing, express his intent to exercise his [§] 363(i) right and provide the Trustee and the Court with evidence that he has the ability to close at the ultimate sale price."  (*See, e.g.*, AA, Ex. 1 (Original Sale Notice) at 8).

On December 9, 2020, the Bankruptcy Court held a hearing on the Carmel Sale Motion, at the end of which the Bankruptcy Judge explained that he was going to approve the Carmel Sale Motion.  (ER 15 (Carmel Sale Hearing) at 271-272).  The written Carmel Sale Order was entered on December 16, 2020.  (ER 16 (Carmel Sale Order) at 309-315).  The Bankruptcy Court made the following findings in the Carmel Sale Order with respect to Mr. Baroni's § 363(i) rights based upon the fact that the Carmel Property was scheduled as community property:

> D. Proper, timely, sufficient and adequate notice has been provided to the Debtor's spouse, James Baroni, regarding his rights under 11 U.S.C. § 363(i). Despite having sufficient notice and opportunity to exercise his rights under § 363(i) with regard to the Property, James Baroni failed to invoke such rights or otherwise oppose the Motion.
>
> 4. The Trustee is authorized to sell, convey, assign, and transfer all of the estate's right, title and interest in the Property for a purchase price of One Million Four Hundred Thousand Dollars ($1,400,000.00) ("Purchase Price") to Buyer, on an "AS IS, WHERE IS" basis, without any warranties, expressed or implied, and without any contingencies, pursuant to Bankruptcy Code § 363(b), and pursuant to Bankruptcy Code § 363(f), free and clear of all liens, claims, interests, and encumbrances, including but not limited to (a) the property taxes, (b) the deeds of trust, and (c) the Option, with such liens, claims, interests, and encumbrances to attach to the sale proceeds with the same priority and rights of enforcement as previously existed, if any. Specifically, the Property is sold free and clear of the 1999 Deed of Trust and the Option pursuant to Bankruptcy Code §§ 363 (f)(2) and (4).
>
> 5. ***The Property is sold free and clear of any and all liens, claims, interests and encumbrances James Baroni may have in the Property pursuant to Bankruptcy Code §§ 363(f)(2) and (i).***
>
> 7. Because James Baroni did not object to the sale or invoke his § 363(i) rights, the Court concludes that ***he has consented to the sale of the Property*** pursuant to § 363(f)(2) and no signature is necessary from James Baroni to effectuate the sale.

(*Id.* at 311, 313) (emphasis added).

The Bankruptcy Court also made findings as to the distribution of the Carmel Property sale proceeds, pursuant to the terms of another final order regarding a

4

Settlement between the Trustee and certain creditors. The findings as to the distribution of proceeds included the following:

> (a) Normal closing costs including, but not limited to, the Trustee's share of escrow charges, the cost of standard coverage title insurance policy, recording fees, documentary transfer taxes, pro-rated real property taxes, and other normal and customary charges, pro-rations, costs, and fees;
>
> (b) Current and delinquent property taxes owed;
>
> (c) **$75,000 carveout paid to the Trustee pursuant to the Settlement with Nationstar** and the Order Granting Chapter 7 Trustee's Motion for Approval of Compromise with Certain Prepetition Lenders Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Section 363(m) of the Bankruptcy Code [Doc. #1273] (the "Settlement Order") to be held for the benefit of the Estate;
>
> (d) Commission of 6% of the Purchase Price paid to the estate's broker, Heidi Robinson, ($42,000) and to the Buyer in his capacity as a California licensed real estate broker ($42,000); and
>
> (e) **The remaining sum of sale proceeds**, after the amounts in Paragraphs 6(a) through 6(d) are paid, **shall be paid by escrow to Nationstar in satisfaction of its Deed of Trust recorded March 4, 2004 as agreed to by Nationstar in the settlement agreement** entered into between, among others, Nationstar and the Trustee and approved pursuant to the Settlement Order.

(*Id.* at 314) (emphasis added).

Mr. Baroni neither objected to the entry of the Carmel Sale Order nor did he appeal. The Debtor, however, appealed the Carmel Sale Order and the Bankruptcy Appellate Panel ("BAP") affirmed. *See In re Baroni*, No. 1:12-BK-10986-MB, 2021 WL 3011907, at *8 (B.A.P. 9th Cir. July 13, 2021), *appeal dismissed*, No. 21-60045, 2023 WL 2058699 (9th Cir. Feb. 8, 2023) ("[T]he record supports the bankruptcy court's findings underlying its approval of the sale."). After Debtor

dismissed her appeal to the Ninth Circuit, the Carmel Sale Order became a final order as to all parties involved.

***Consummation of the Sale of the Carmel Property***: A stay pending appeal was imposed on the sale of the Carmel Property until the Ninth Circuit issued its decision in two related appeals. *In re Baroni*, 36 F.4th 958 (9th Cir. 2022). As a result of the Ninth Circuit's lifting of the stay on June 8, 2022, the Carmel Sale Order was no longer stayed, and the Trustee was free to complete the sale of the Carmel Property.

On June 23, 2022, the Trustee completed the sale of the Carmel Property. On June 27, 2022, after the Trustee received the final settlement statement (the "Settlement Statement") from the escrow company, the Trustee filed his Report of Sale, advising the Court and all interested parties that the Carmel Property had been sold and escrow had closed, and attached a copy of the Settlement Statement to the filing. (ER 22 (Report of Sale of Carmel Property) at 393-398).

***Mr. Baroni's 363 Motion and Trustee's Motion for Protective Order***: On July 5, 2022, with the Carmel Property sold pursuant to the Carmel Sale Order and the proceeds distributed, Mr. Baroni filed the 363 Motion seeking to have the Carmel Property sold to him or, alternatively, to receive 50% of the net proceeds. (ER (363 Motion) at 399-550). In the 363 Motion, Mr. Baroni made a slew of arguments suggesting there were various improprieties surrounding when and how the sale of the Carmel Property closed. The Court need not and does not attempt to summarize the litany of arguments on this issue; suffice it to say that each of Mr. Baroni's arguments seeks to establish that the sale of the Carmel Property has never been "consummated" as a matter of law.

In association with the 363 Motion, Mr. Baroni moved for discovery, seeking to investigate the details concerning the sale and escrow process of the Carmel Property. Meanwhile, before the Bankruptcy Court ruled on the request for discovery, Mr. Baroni and Debtor served subpoenas, deposition notices, and

document demands on several parties, including the Trustee. The discovery that was sought is listed as follows:

| Discovery Item | Proponent | Date for Production or Appearance |
|---|---|---|
| Notice of Deposition of Antoni[a] Delgado; Rule 45 subpoena for documents | Debtor and Mr. Baroni | 19-July-22 |
| Notice of Deposition of A&A Escrow Services, Inc; Rule 45 subpoena for documents | Debtor and Mr. Baroni | 19-July-22 |
| Notice of Deposition of Brutzkus Gubner Rozansky Seror Weber LLP, Currently Named BG Law LLP per Their Press Release; Rule 45 subpoena for documents | Debtor and Mr. Baroni | 20-July-22 |
| Notice of Deposition of David Seror | Debtor and Mr. Baroni | 21-July-22 |

The document demands included the following:

1. Payoff demand from the bank and evidence of payment to the bank
2. Evidence of payment to broker;
3. Evidence that Captains paid $43,500 deposit;
4. Documents referring to why the quitclaim deed was signed by the Trustee on 12/12/2020 and when Captains received such deed, including whether such deed was received prior to payment;
5. Documents relating to the payment of the $1,400,000 purchase price;
6. Communications with the Captains or the escrow company regarding the motion to sell and entry of the court's Carmel Sale Order;
7. All communications with the Captains and the escrow company from the date of the original purchase to June 30, 2022;

The Debtor and Mr. Baroni also seek the depositions of the Trustee's counsel, the escrow agent and escrow company, and the Trustee all related to the sale of the Carmel Property.

(ER 33 (Trustee's Motion for a Protective Order) at 741-42).

In response to the above discovery requests, the Trustee moved for a protective order, quashing the subpoenas and deposition notices. (*Id.* at 743).

The Bankruptcy Court denied the 363 Motion (the "363 Order") and granted the Trustee's request for a Protective Order (the "Protective Order") but denied without prejudice the Trustee's request for sanctions. The sanctions issue is not a subject of this appeal.

## II. ISSUES ON APPEAL

1. Did the Bankruptcy Court err in concluding that the 363 Motion was an impermissible collateral attack on the Carmel Sale Order?

2. Did the Bankruptcy Court abuse its discretion by granting the Trustee's protective order against Mr. Baroni's discovery requests?

## III. STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158(a). When considering an appeal from the bankruptcy court, a district court uses the same standard of review that a circuit would use in reviewing a decision of a district court. *See In re Baroff*, 105 F.3d 439, 441 (9th Cir. 1997).

Whether a prior judgment has a claim preclusive or issue preclusive effect is either a question of law or a mixed question of law and fact with the legal issues predominating. The Court has therefore reviewed the bankruptcy court's determination that the 363 Motion is a collateral attack de novo, except to the extent it involved the Bankruptcy Court's interpretation of its own orders, which the Court reviewed for abuse of discretion. *See In re Fine*, No. ADV LA 04-01303-BB, 2005 WL 6960195, at *6 (B.A.P. 9th Cir. Sept. 30, 2005) (citing *O'Malley Lumber Co. v. Lockard (Matter of Lockard)*, 884 F.2d 1171, 1174 (9th Cir. 1989)); *see also Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011), *aff'd, sub. nom Marciano v. Chapnick (In re Marciano)*, 708 F.3d 1123 (9th Cir. 2013) ("[A]

bankruptcy court's interpretation of its own orders [is reviewed] for abuse of discretion.").

A denial of discovery by the bankruptcy court is subject to an abuse of discretion standard. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). "A decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant. Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed." *Colchester v. Lazaro*, 16 F.4th 712, 725 (9th Cir. 2021) (quoting *Laub*, 342 F.3d at 1093).

## IV.   DISCUSSION

### A.   The Bankruptcy Court Did Not Err in Concluding that Mr. Baroni's 363 Motion was an Impermissible Collateral Attack on the Final, Non-Appealable Carmel Sale Order.

Mr. Baroni seeks to compel the Trustee to sell the Carmel Property to Mr. Baroni pursuant to 11 U.S.C. § 363(i), or alternatively to compel the Trustee to distribute to Mr. Baroni 50% of the net sale proceeds obtained from the sale of the Carmel Property pursuant to 11 U.S.C. § 363(j). (AB at 1).

In pertinent part, § 363(i) of the Bankruptcy Code provides that "[b]efore the consummation of a sale . . . of property of the estate that was community property . . . . the debtor's spouse . . . may purchase such property at the price at which such sale is to be consummated. 11 U.S.C. § 363(i). Section 363(j) provides that after a sale of community or co-owned property, the Trustee shall distribute the sale proceeds according to the interests of any spouse, co-owner, and the estate. 11 U.S.C. § 363(j).

True to form, Mr. Baroni's counsel advances convoluted arguments that ask the Court to engage in painful mental gymnastics. Much of the arguments put forward may be ignored, however, because Mr. Baroni faces an insurmountable hurdle that he fails to adequately confront. The Carmel Sale Order — which sold

the Carmel Property free and clear of Mr. Baroni's § 363(i) rights and detailed how the proceeds of the sale would be distributed — is a final, non-appealable order that cannot be collaterally attacked.

The Carmel Sale Order forecloses the request made under § 363(i), because within that Order, the Bankruptcy Court explicitly held that the "[Carmel] Property is sold free and clear of any and all liens, claims, interests and encumbrances James Baroni may have in the Property pursuant to Bankruptcy Code." (ER 16 (Carmel Sale Order) at 311, 313, 314). Further, the Bankruptcy Court held that "[b]ecause James Baroni did not object to the sale or invoke his § 363(i) rights . . . he has consented to the sale of the Property pursuant to § 363(f)(2)." (*Id*. at 314). While the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, "one of those conditions **is the consent of the interest holder**, and lack of objection (provided of course there is notice) counts as consent." See *FutureSource LLC v. Reuters Ltd*., 312 F.3d 281, 285 (7th Cir. 2002) (collecting cases) (emphasis added).

Despite these fatal findings, Mr. Baroni's 363 Motion (and now his appeal) seeks to unravel the final Carmel Sale Order based on his claimed § 363(i) rights. The Bankruptcy Court, reviewing its own Carmel Sale Order, concluded that, after being served with sufficient notice of the Carmel Sale Hearing, "Mr. Baroni waived his matching right under [§] 363(i) because he didn't appear at the [Carmel Sale] [H]earing and state his intention to exercise it[.]" (ER 45 (FF&CL) at 1333:24-1335:9). Yet, Mr. Baroni now argues on appeal that "James has **not** waived his [§] 363(i) rights[.]'" (ARB at 4) (emphasis in original).

The Bankruptcy Court reasoned that while Mr. Baroni's counsel contends that he is "not seeking to collaterally attack the [Carmel] [S]ale [O]rder," that is, "precisely what he is trying to do." (ER 45 (FF&CL) at 1336:4-5). The Bankruptcy Court explained that the Carmel Sale Order "plainly precludes Mr. Baroni from now seeking to have the property sold to him" because in the Carmel Sale Order, the

10

Bankruptcy Court "found that Mr. Baroni did not show up at the hearing to express an intent to exercise his [§] 363(i) purchase rights, concluded that Mr. Baroni had therefore consented to the sale to the third-party purchasers and authorized the sale to those buyers." (*Id.* at 1336:6-11).

The Bankruptcy Court's interpretation of its own Carmel Sale Order (i.e., that the Order found and concluded that Mr. Baroni's §363(i) rights had been waived) is the only rational reading of the Carmel Sale Order, and therefore was not an abuse of discretion.

Further, the Bankruptcy Court did not err as a matter of law, in concluding that the 363 Motion is a collateral attack on the Carmel Sale Order, given Mr. Baroni seeks to assert his §363(i) rights despite the Carmel Sale Order's holding that Mr. Baroni waived his § 363(i) rights.

The essence of Mr. Baroni's argument is that the finding of waiver in the Carmel Sale Order is erroneous because Mr. Baroni "should not have been required to show up" at the Carmel Sale Hearing "as a prerequisite to exercising his [§] 363(i) rights." (ER 45 (FF&CL) at 1336:19-22; *see also* AB at 31). Instead, Mr. Baroni "contends that up until the moment of 'consummation' he can swoop in and purchase the property" and because the Carmel Sale Order prohibits him from doing so, he contends "the [Carmel] [S]ale [O]rder interferes with this right." (ER 45 (FF&CL) at 1336:22-25). This argument, in turn, is premised on the language of §363(i) and a BAP decision interpreting that language.

As noted, § 363(i) provides that ***"[b]efore the consummation of a sale"*** of community property, the debtor's spouse "may purchase such property at the price at which such sale is to be consummated." 11 U.S.C. § 363(i) (emphasis added). In *In re Lewis*, 515 B.R. 591 (B.A.P. 9th Cir. 2014), the BAP considered whether the entry of a sale order, without more, constituted "consummation of a sale," such that a non-debtor spouse may never assert his or her §363(i) rights following the entry of a sale order. The BAP concluded that a sale order does not, on its own, amount to

11

"consummation of a sale" for purposes of §363(i), but instead, to consummate a sale, the third party must tender payment.  *See id*. at 595.

Nothing in *In re Lewis* suggests that the BAP was dealing with a sale order that included an ***explicit*** finding that the non-debtor spouse had waived her § 363(i) rights by failing to object to the first sale order.  Indeed, the facts suggest the opposite because the bankruptcy court entered a second sale order selling the property to the non-debtor spouse pursuant to § 363(i), without even "officially vacat[ing]" the first sale order to the third party, which necessarily implies that the orders were not irreconcilable (and moreover, the non-debtor spouse sought timely reconsideration of the first sale order).  *See id.* at 593, 396 (noting that the bankruptcy court did not need to "officially vacate" the first sale order before granting the non-debtor spouse's § 363(i) sale order, which implicitly suggests that the orders could be read to mean that the first sale order was contingent on the failure of the non-debtor spouse to exercise her rights under § 363(i) prior to consummation of the sale by the third party).

By contrast, here, the Bankruptcy Court conditioned the sale of the Carmel Property to the Captains on Mr. Baroni ***appearing at the Carmel Sale Hearing and objecting to the sale***.  Not having done so, the Bankruptcy Court explicitly held via the Carmel Sale Order that Mr. Baroni waived his § 363(i) rights.  Therefore, any order compelling the Trustee to now sell the property to Mr. Baroni under § 363(i) would inevitably be irreconcilable with the Carmel Sale Order, which held that Mr. Baroni waived his § 363(i) rights.  *See In re Adams*, No. BAP CC-19-1030-TALS, 2019 WL 6463992, at *5 (B.A.P. 9th Cir. Nov. 26, 2019) (concluding that a spouse must appeal (or otherwise seek reconsideration under Rule 60(b) of) a sale order that finds and concludes that the spouse's § 363(i) rights have been waived in order to preserve the § 363(i) right).

Ultimately, the question on appeal is not whether, under *In re Lewis*, the Bankruptcy Court erred by requiring Mr. Baroni to object to the sale or otherwise

12

waive his § 363(i) rights, but whether the Bankruptcy Court erred in concluding that res judicata precluded Mr. Baroni from making such an argument after the time to appeal has expired and without seeking reconsideration of the Carmel Sale Order under the proper procedure. The Bankruptcy Court correctly concluded that the argument and relief sought are barred by principles of res judicata.

An individual may challenge an order authorizing a sale of estate assets by either (1) objecting to the proposed sale and then appealing the sale order to the district court or (2) attacking the order collaterally pursuant to Federal Rule of Civil Procedure 60(b), which is applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9024. *See In re Ducane Gas Grills*, 320 B.R. 324, 333 (Bankr. D.S.C. 2004); *In re Liu*, 611 B.R. 864, 881 (B.A.P. 9th Cir. 2020) ("Our prior decisions make clear that appellants cannot successfully challenge an order on appeal by attacking a prior final order that they did not timely appeal."); *In re Alakozai*, 499 B.R. 698, 704 (9th Cir. BAP 2013) ("Alakozai's challenge to . . . the In Rem Order in the Fourth Case amounts to a collateral attack on a final order"); *see also In re Grantham Bros.*, 922 F.2d 1438, 1442 (9th Cir. 1991) ("The failure of the debtors to seek any review, reconsideration, or stay of the bankruptcy court's order precluded the collateral attack included in [debtors' adversary proceeding] complaint."); *In re TLFO, LLC*, 572 B.R. 391, 429 (Bankr. S.D. Fla. 2016) ("[F]inal sale orders of bankruptcy courts may not be challenged or collaterally attacked outside of [the proscribed] method of challenges, objections[,] and appeals[.]").

Here, Mr. Baroni did not object to the entry of the Carmel Sale Order, appeal the Carmel Sale Order, or seek reconsideration of the Carmel Sale Order from the Bankruptcy Court under Rule 60(b). Instead, Mr. Baroni repeatedly insists that the 363 Motion is not a collateral attack. Mr. Baroni is mistaken.

As the Bankruptcy Court explained, whether *In re Lewis* prohibited it from finding that Mr. Baroni's rights were waived prior to the consummation of the sale is "immaterial" because if Mr. Baroni did not agree that such a waiver was valid, he

should have "objected, appeared at the hearing, and appealed the order[.]"  (ER 45 (FF&CL) at 1337:7-9).  The Bankruptcy Court reasoned that the Carmel Sale Order, "authorizing the Trustee to sell the property to third-party buyer, notwithstanding Mr. Baroni's Section 363(i) rights, is a final order" and yet "Mr. Baroni is now showing up arguing that the property should be sold to him because of his 363(i) rights."  (*Id.* at 1337:8-15).  The Bankruptcy Court noted, "if this is not an impermissible collateral attack on a final order of this court, I don't know what is." (*Id.* at 1337:16-18).  Therefore, the Bankruptcy Court denied the 363 Motion under principles of res judicata.  (*Id.* at 1337:19-22).

        The doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits of the claim in a previous action involving the same parties or their privies.  *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994) (internal citation omitted).  "Res judicata bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Id.*  The elements necessary to establish res judicata are: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005) (internal citations omitted).

        The application of the doctrine to bankruptcy court orders is somewhat distinct from other scenarios given the nature of the proceedings, but courts routinely conclude that attacks to final, non-appealable bankruptcy court orders outside the specified criteria of Rule 60(b) are improper "collateral attacks," and the "collateral attack" doctrine is a species of "res judicata."  *See, e.g., In re Grantham Bros.*, 922 F.2d at 1442 (Ninth Circuit affirming order imposing Rule 11 sanctions against the debtor's counsel because the debtor's counsel collaterally attacked a sale order and did not seek "any review, reconsideration, or stay of the bankruptcy court's order"); *see also In re Int'l Nutronics*, 28 F.3d at 970-71 (referring to an action barred by res judicata as a "collateral attack" on a bankruptcy court order).

Therefore, the Bankruptcy Court applied the correct legal standard and also correctly concluded that all the elements are readily met, for these reasons:

*First*, there is an identity of claims given Mr. Baroni's entire motion is premised on the fact that his 363(i) rights have not been waived despite the Carmel Sale Order's contrary holding. And that Mr. Baroni did not raise the *In re Lewis* argument prior to the entry of the Carmel Sale Order does not save him. *See In re HNRC Dissolution Co.*, 549 B.R. 469, 483 (Bankr. E.D. Ky. 2016), *aff'd*, 585 B.R. 837 (B.A.P. 6th Cir. 2018), *aff'd*, 761 F. App'x 553 (6th Cir. 2019) ("A different legal theory, based on the same set of facts as in the prior action will not save the claim from res judicata.").

*Second*, the Carmel Sale Order is a final judgment on the merits. *See In re Int'l Nutronics*, 28 F.3d at 969 (the Ninth Circuit noting that a "bankruptcy court's order confirming a sale has preclusive effects" and is a final judgment for purposes of res judicata); *see also In re Clinton St. Food Corp.*, 254 B.R. 523, 530–31 (Bankr. S.D.N.Y. 2000) (collecting cases across multiple circuits for the proposition that "[a] bankruptcy court order approving a sale of assets is a final order for res judicata purposes").

And *third*, the privity element is met because "[a] bankruptcy sale under 11 U.S.C. § 363, free and clear of all liens, is a judgment that is good as against the world, not merely as against parties to the proceedings." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 732 (8th Cir. 2004); *see also Gekas v. Pipin (In re Met–L– Wood Corp.)*, 861 F.2d 1012, 1017 (7th Cir. 1988) ("A proceeding under [§] 363 is an in rem proceeding. It transfers property rights and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding.").

Therefore, Mr. Baroni's arguments are foreclosed by res judicata – even if the Carmel Sale Order was erroneous (which this Court has not considered but doubts, based on what can be gleaned from the appellate briefs). *See Espinosa v. United*

*Student Aid Funds, Inc.*, 553 F.3d 1193 (9th Cir. 2008), *judgment aff'd*, 559 U.S. 260 (2010) ("Even an incorrect judgment is binding, unless and until it is re-opened and modified"). Because Mr. Baroni did not bring a Rule 60(b) motion for reconsideration of the Carmel Sale Order, does not advance any Rule 60(b) arguments, and instead insists that the 363 Motion is not a collateral attack, this Court will not construe the 363 Motion or this appeal as a Rule 60(b) motion.

In sum, the Bankruptcy Court correctly concluded that the 363 Motion was a collateral attack on the Carmel Sale Order to the extent it sought to have the Trustee sell Mr. Baroni the Carmel Property under §363(i).

To the extent the 363 Motion seeks a distribution of proceeds pursuant to §363(j), the Bankruptcy Court's conclusion is even more justified because such relief is barred by *two* final orders. The Carmel Sale Order detailed precisely how the sale proceeds would be distributed, and in that respect, the Carmel Sale Order merely implemented the terms of another final, non-appealable order, the Settlement Order, reached between the Trustee and certain creditors of the Estate. (*See* ER 16 (Carmel Sale Order) at 314); *see also* Bankruptcy Docket No. 1273 ("Settlement Order") (mandating the sale of the Carmel Property and detailing how the proceeds would be distributed); *see also See In re Baroni*, No. 1:12-BK-10986-MB, 2021 WL 3011907, at *7 (B.A.P. 9th Cir. July 13, 2021) (affirming Settlement Order on Debtor's appeal); *In re Baroni*, Case No. 21-60045, 2023 WL 2058699, at *1 (9th Cir. Feb. 8, 2023) (dismissing Debtor's appeal of the Settlement Order for lack of standing). Mr. Baroni does not even pretend to advance arguments to explain how the 363 Motion is not a collateral attack on both the Carmel Sale Order and the Settlement Order. Therefore, the Bankruptcy Court did not err when it concluded that Mr. Baroni "may not seek to unsettle the Court's order governing the distribution of proceeds that he had notice of and opportunity to object to, and an opportunity to appeal from." (ER 45 (FF&CL) at 1370:23-1371:1).

Because Mr. Baroni's 363 Motion would necessarily require the final, non-appealable Carmel Sale Order to be set aside, it is clearly a collateral attack. Accordingly, the Bankruptcy Court did not err, and the 363 Order is **AFFIRMED**.

For safe measure, the Court further notes that even if it were not an impermissible collateral attack, Mr. Baroni fails to convince the Court that the Bankruptcy committed any error of law or abuse of discretion in concluding that the sale of the Carmel Property *has in fact been consummated,* such that Mr. Baroni's § 363(i) rights are extinguished by operation of law (and regardless of the Carmel Sale Order). Indeed, Mr. Baroni concedes that if the sale has been consummated, then his § 363(i) rights have been extinguished and he lacks standing to bring a § 363(i) Motion and/or appeal. (*See* ARB at 2) ("**IF** the sale was **consummated**, pursuant to the [Carmel] Sale Order" then "[b]y not opposing/appealing" Mr. Baroni "would have waived his 363(i) rights") (emphasis in original).

Because the Bankruptcy Court correctly concluded that the sale has in fact been consummated, Mr. Baroni lacks standing to bring a motion premised on rights that he no longer has. Accordingly, the Bankruptcy Court's 363 Order is further **AFFIRMED** to the extent it is premised on Mr. Baroni's lack of standing.

**B.    The Bankruptcy Court Did Not Abuse its Discretion in Granting the Trustee's Protective Order in Response to the Discovery Requests.**

The Bankruptcy Court concluded that all of the discovery requests, which delve into the "details of how the escrow operated," were "irrelevant," because they all went to the issue of whether the sale of the Carmel Property was "consummated." (ER 1370:19-20). Correctly applying Federal Rule 26(b)(1), which is applicable to bankruptcy courts in contested matters via Federal Rules of Bankruptcy Procedure 7026, the Bankruptcy Court concluded that "the discovery . . . is not important to the issues at stake in the action, not important to resolving any issues of consequence in the matter, not proportional and not justified by any benefit

17

it would produce." (ER 45 (FF&CL) at 1372:9-12). The Bankruptcy Court utilized the correct standard and correctly applied that standard.

Whether the sale was "consummated" would only matter if Mr. Baroni successfully set aside the Carmel Sale Order, which, as noted, explicitly held that Mr. Baroni's § 363(i) rights in the Carmel Property were forever extinguished because he failed to object at the Carmel Sale Hearing. Because Mr. Baroni may not use this appeal to collaterally attack the Carmel Sale Order, Mr. Baroni fails to establish that the discovery sought is relevant and/or proportional to the needs of any contested matter. (*See* AB at 37) ("No amount of discovery can undo the finality of the [Carmel] Sale Order."). In sum, Mr. Baroni has not shown that he was prejudiced by the denial of discovery, because there is no possibility that the outcome would have been different had discovery been allowed. *See Colchester*, 16 F.4th at 725 (explaining that appellant must show prejudice to establish that a denial of discovery was an abuse of discretion).

The Bankruptcy Court did not abuse its discretion in granting the Trustee's request for a protective order. Accordingly, the Protective Order is **AFFIRMED**.

### C. Sanctions Request

To the extent the Trustee seeks sanctions for bringing this appeal, the request is **DENIED**. The Trustee must bring such requests as separately filed Motions and should not add such requests to his briefs regarding the merits of the appeal. Further, the Court is already considering another sanctions order against Mr. Baroni and his counsel, and that sanctions order, if issued, will consider Mr. Baroni's and counsel's history of meritless arguments and appeals.

///

///

///

///

///

## V. CONCLUSION

The 363 Order and Protective Order are both **AFFIRMED**.

IT IS SO ORDERED.

DATED: June 28, 2023

_____
MICHAEL W. FITZGERALD
United States District Judge

cc: United States Bankruptcy Court